UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

| | |
|---|---|
| Seui Cavan,<br><br>   Plaintiff,<br><br>v.<br><br>Dr. Mayer, Dr. Bennet,<br>S.I.S. Weber, and M.D. Ms. Voss<br>*in their individual capacities,*<br><br>   Defendants. | Case No. 18-cv-2568 (JRT/DTS)<br><br>**CORRECTED**<br>**REPORT AND RECOMMENDATION** |

_____

Seui Cavan, Reg. No. 08947-030, Federal Prison Camp – Duluth, P.O. Box 1000, Duluth, MN 55814, *Pro Se* Plaintiff

Angela Nelson and Jennifer Waterworth, Gislason & Hunter LLP, 701 Xenia Ave. South, Suite 500, Minneapolis, MN 55416, for Defendant Mayer

Andrew Tweeten, Assistant U.S. Attorney, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, Minnesota, 55415, for the Federal Defendants

---

Plaintiff Seui Cavan brought a *Bivens*[1] action alleging Eighth Amendment violations by personnel at the Federal Institution in Sandstone, Minnesota (FCI-Sandstone).[2] The three Federal Defendants (Bennett, Voss and Weber) moved to dismiss the lawsuit on the grounds that Cavan failed to exhaust his administrative remedies, that two defendants are immune from suit, and that Cavan's claims otherwise fail as a matter of law. Docket No. 63. The fourth defendant, Dr. Thomas Mayer, moved for summary judgment or statutory dismissal. Docket No. 86. Cavan initially opposed Mayer's motion

---

[1] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).
[2] After this lawsuit was filed, Cavan was transferred to the Federal Prison Camp in Duluth, Minnesota.

but later agreed to dismiss him from the lawsuit. *See* Docket Nos. 102, 111. What remains then is the dismissal motion brought by the Federal Defendants. For the reasons stated below, the Court recommends the motion be granted as to Bennett and Voss, but denied as to Weber.

Also before the Court are two motions brought by Cavan which the Court recommends be denied because there is no relief to be granted. His first motion is not really a motion but rather a one-page document with additional medical information to support his claims. *See* Docket No. 74. The second is an Omnibus Motion that pertains to (1) his claims against Dr. Mayer, which he has now agreed to dismiss; and (2) his request for an order directing that he not be transferred from FCI-Sandstone, which is moot given that he has already been transferred to FPC – Duluth. *See* Docket No. 82.

## FINDINGS OF FACT

**I.    Procedural Background**

Cavan filed a *Bivens* action against Peter Bennett, Heidi Voss, Michael Weber (the "Federal Defendants") and Dr. Thomas Mayer, alleging cruel and unusual punishment and deliberate indifference in violation of the Eighth Amendment. Second Am. Compl. & Exs., Docket Nos. 58, 58-1 through 58-7. Mayer is a contracted physician who provided medical services to Cavan and other inmates at FCI-Sandstone. Answer ¶¶ II, III, Docket No. 61; Lanvers Decl. ¶ II, III, Docket No. 89. Peter Bennett, a Nurse Practitioner at FCI-Sandstone, is a commissioned officer in the U.S. Public Health Service (PHS). Bennett Decl. ¶ 1, Docket No. 66. Heidi Voss, the Health Services Administrator at FCI-Sandstone, is also a commissioned officer in the PHS. Voss Decl. ¶ 1, Docket No. 70. Michael Weber is identified in the Second Amended Complaint as "S.I.S. Weber," and he

apparently is a Special Investigative Service technician.[3] The record does not contain any declaration from Weber or anyone on his behalf that attests to his title, job duties, authority, or role (or lack thereof) in the events alleged by Cavan.

After several months of misfires in serving the complaint on the Federal Defendants, Cavan applied for a default judgment, at which time the Government filed an appearance on February 12, 2019. *See* Docket Nos. 26, 28-30. Cavan twice amended his complaint, making the Second Amended Complaint the operative pleading here. *See* May 24, 2019 Order ¶ 2, Docket No. 60; Second Am. Compl. & Exs., Docket Nos. 58, 58-1 through 58-7. Service was effected on the Federal Defendants, who then filed a Motion to Dismiss on June 24, 2019 [Docket No. 63] which Cavan opposes [Docket Nos. 74-75, 79-80].

Mayer filed an Answer [Docket No. 61] and then a Motion for Summary Judgment and/or for Statutory Dismissal Pursuant to Minnesota Statutes Section 145.682 [Docket No. 86]. Cavan initially filed an opposition memorandum [Docket No. 102] but on November 14, 2019 filed his own motion to dismiss Mayer from the lawsuit [Docket No. 111], leaving only the Federal Defendants' motion to resolve.

## II.     Administrative Remedies

The BOP has established a 4-step Administrative Remedy Program to review inmates' complaints about any aspect of their confinement. *See* 28 C.F.R. §§ 542.10-542.19. An inmate must first attempt informal resolution by presenting his issue to prison staff. *Id.* § 542.13(a). Each prison establishes procedures to allow for informal resolution

---

[3] The Federal Defendants' memorandum of law says that Weber is an "SIS Technician" and that "S.I.S." stands for Special Investigative Service, *see* Docket No. 65 at 1, 13.

of inmate complaints. *Id.* At step 1 the inmate submits a Request for Informal Resolution form ("BP-8"). Bush Decl. ¶ 6, Docket No. 67. BP-8s are not assigned a Remedy ID number and are not tracked. *Id.* If the issue is not resolved informally, the inmate may make a formal written Request for Administrative Remedy ("BP-9") at the prison. *Id.*; 28 C.F.R. § 542.14(a). If the inmate is dissatisfied with the response to his BP-9, he may appeal to the Regional Director ("BP-10"). Bush Decl. ¶ 6; 28 C.F.R. § 542.15(a). If dissatisfied with the Regional Director's response, the inmate may appeal to the General Counsel's Office in Washington, D.C., by filing a Central Office Administrative Remedy Appeal ("BP-11"). *Id.* An inmate may not raise in an appeal an issue he did not raise in a lower level filing. 28 C.F.R. § 542.15(b)(2). The General Counsel's Office is the final administrative appeal. *Id.* § 542.15(a).

An inmate may bypass prison-level administrative remedies and file his complaint to the Regional Office if he reasonably believes the issue is "sensitive" and his safety or well-being would be in danger if his request became known at the prison. *Id.* § 542.14(d)(1). Requests that do not meet the "sensitive" standard are rejected and the inmate is advised to pursue the request at the prison level. *Id.*

On or about May 16, 2018 Cavan filed a step 1 informal complaint (BP-8) regarding medical treatment of his back pain and requesting a surgical consultation. Second Am. Compl. Ex. 1, Docket No. 58-2 at 16.[4] The department head, Voss, responded to the informal complaint on June 4, 2018, stating that a review of medical records indicated that surgical intervention was not warranted. *Id.* at 14. The correctional counselor issued

---

[4] The citations to page numbers in Exhibit 1 (the administrative remedies documents) refer to the ECF header page numbers, not the handwritten page numbers at the bottom of the pages.

4

a BP-9 on June 6, 2018. *Id.* at 16. Cavan did not sign the BP-8 form. *Id.* Cavan filled out a step 2 Request for Administrative Remedy (BP-9) on June 10, 2018. *Id.* at 15. His Administrative Remedy form (given Remedy ID 943973-F1) was rejected and returned to him on June 15, 2018 because he did not sign his attempt at informal resolution; he was advised he could resubmit his request in proper form within five days. *Id.* at 13 (Rejection Notice).

Cavan filed a step 3 Regional Administrative Remedy Appeal (BP-10) on June 18, 2018. *Id.* at 6-12.[5] He reiterated his claims regarding back pain and not being allowed a surgical consultation and also raised claims against Weber. *Id.* at 12. He stated he was filing his BP-10 appeal as a "sensitive" matter, which would allow him to bypass the steps 1 and 2 (BP-8 and BP-9) prison-level remedies, because, among other reasons, prison staff were "destroying . . . administrative remedies." *Id.* He stated that on June 15, 2018 counselor Greener had yelled at him and "threaten[ed] also to destroy federal documents (BP-8, BP-9) by paper shredder, to end [his] administrative remedy." *Id.* at 11.

On July 5, 2018 the North Central Regional Office rejected and returned his BP-10 appeal (Remedy I.D. 943973-R1). *Id.* at 5 (Rejection Notice). It stated, "The issue you raised is not sensitive. However, we retained your request/appeal according to policy. You should file a request or appeal at the appropriate level via regular procedures." *Id.*

Cavan then filed a step 4 Central Office Administrative Remedy Appeal (BP-11) *Id.* at 3-4. He alleged that his BP-10 had only "stirred up more anger" and that he had

---

[5] Pages 11-12 of Docket No. 58-2 (referring to page numbers shown on the ECF header) clearly belong to his BP-10 form. Although less clear, it also appears that pages 6-10 are part of his BP-10 filing, but it is possible these pages were included in his BP-11 appeal of the rejection of his BP-10.

filed the BP-10 "because BP-8 and BP-9 are being destroyed by paper shredders. I have personally witnessed a BP-8 destroyed in my presence, by Mr. Armstrong. (Counselor). This was his statement of saying all my future BP-8's etc. will be going to the shredder. SANDSTONE is known for doing this." *Id.* at 3. On August 7, 2018 the Central Office rejected and returned his BP-11 (Remedy I.D. 943973-A1), stating that that it concurred with the rationale of the Regional Office, that Cavan did not submit the proper number of continuation pages, that he filed his request at the wrong level and should direct it to the institution, and that he should "follow directions provided on prior rejection notices." *Id.* at 2.[6]

The BOP's database documents the BP-9, BP-10, and BP-11 filed by Cavan that were rejected. Bush Decl. ¶¶ 15-18 & Exs. B & C, Docket Nos. 67, 67-2, 67-3.

## CONCLUSIONS OF LAW

### I.   Standard of Review

The Federal Defendants have moved to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedures alleging that Cavan's complaint fails to state a claim. To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead sufficient facts, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007). In determining whether to grant a dismissal motion, courts "consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose

---

[6] Some portions of sentences on the BP-11 Rejection Notice are blacked out in the ECF scanned version of the document.

authenticity is unquestioned; without converting the motion into one for summary judgment." *Dittmer Props., L.P. v. F.D.I.C.*, 708 F.3d 1011, 1021 (8th Cir. 2013) (quoting *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012)) (internal quotation marks omitted).

*Pro se* complaints are to be liberally construed. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A "*pro se* complaint, however inartfully pleaded, must be must be held to less stringent standards than formal pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (internal quotations and citations omitted).

Bennett and Voss also allege they are immune from suit under *Bivens* and the Court therefore lacks subject matter jurisdiction over these claims. To determine whether the Court has subject matter jurisdiction to hear a claim pursuant to Rule 12(b)(1), the Court may consider the entire record and is not limited to the pleadings. *Osborn v. United States*, 918 F.2d 724, 728-29 (8th Cir. 1990). When a jurisdictional question exists, the "court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* at 730 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

## II. Defendants Bennett and Voss

Bennett and Voss assert that Cavan's claims against them must be dismissed because, first, he did not properly exhaust his administrative remedies, and second, they are immune from his lawsuit under the Public Health Services Act. Regardless of the

exhaustion issue[7], the Court finds that Cavan's claims must be dismissed as a matter of law because Bennett and Voss have immunity.

The Supreme Court has held that a *Bivens* action cannot be brought against PHS personnel for constitutional violations arising out of their performance of medical services or related functions within the scope of their PHS office or employment. The Court stated:

> This case presents the question whether 42 U.S.C. § 233(a) . . . precludes an action under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), against U.S. Public Health Service (PHS) personnel for constitutional violations arising out of their official duties. When federal employees are sued for damages for harms caused in the course of their employment, the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346, 2671-2680, generally authorizes substitution of the United States as the defendant. Section 233(a) makes the FTCA remedy against the United States "exclusive of any other civil action or proceeding" for any personal injury caused by a PHS officer or employee performing a medical or related function "while acting within the scope of his office or employment." Based on the plain language of § 233(a), we conclude the PHS officers and employees are not personally subject to *Bivens* actions for harms arising out of such conduct.

*Hui v. Castaneda*, 559 U.S. 799, 801-02 (2010).

The record shows, and Cavan has not disputed, that Bennett and Voss are PHS officers and that his claims against them relate to their performance of medical or related functions in the course of their duties at FCI-Sandstone. Accordingly, they are immune from suit and the damages claims against them must be dismissed. In addition, any request for injunctive relief[8] with respect to Bennett and Voss is not cognizable in this

---

[7] For reasons that are discussed in detail below, analysis of the exhaustion issue is complicated by the opacity of Cavan's allegations. Because Bennett and Voss are entitled to be dismissed on immunity grounds, however, the court need not address exhaustion as a basis for their dismissal from the action.

[8] Cavan requests that the Court order particular medical tests and treatment. *See* Second Am. Compl. Sec. V, pg. 7A, Docket No. 58-1 at 10.

8

*Bivens* action for money damages against them in their individual capacities and must be dismissed.

### III. Defendant Weber

Cavan alleges that Weber inflicted cruel and unusual punishment on him in violation of the Eighth Amendment by deliberately having him placed in a Food Services job that Weber knew was likely to harm him given his medical injuries. Weber allegedly inflicted this "work punishment" in retaliation for previous events at the prison. *See* Second Am. Compl. Sec. IV, Claim 1 at 6A [Docket No. 58-1 at 5], and Ex. 1 at 3, 5-8, 10 [Docket No. 58-2 at 4, 6-9, 11]. Weber has moved to dismiss the claims against him on the grounds that Cavan failed to exhaust his administrative remedies and that his claims against Weber otherwise fail as a matter of law.

The Prison Litigation Reform Act (PLRA) requires exhaustion of administrative remedies:.

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). The "boundaries of proper exhaustion" are defined by the prison's specific administrative requirements. *Jones v. Bock*, 549 U.S. 199, 218 (2007). Exhaustion is mandatory under the PLRA, and unexhausted claims cannot be brought in court. *Id.* at 211. The benefits of exhaustion include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Id.* at 219.

9

However, the PLRA requires exhaustion of only "such administrative remedies as are available." 42 U.S.C. § 1997e(a); *Townsend v. Murphy*, 898 F.3d 780, 783 (8th Cir. 2018). The Supreme Court has said the availability of a remedy is "about more than whether an administrative procedure is 'on the books.'" *Id.* (quoting *Ross v. Blake*, 136 S.Ct. 1850, 1859 (2016)). An administrative remedy is not available or "capable of use," for example, "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 136 S.Ct. at 1860. "A record keeper's declaration that a prisoner did not exhaust a grievance is insufficient to establish non-exhaustion as a matter of law when the prisoner makes sworn assertions that he took the necessary steps to exhaust." *Boyd v. Doe*, 746 Fed. App'x. 599, 600 (8th Cir. 2018) (per curiam) (reversing summary judgment because fact issue remained as to whether corrections officials returned attachments to prisoner to enable him to comply with exhaustion requirements); *Conner v. Doe*, 285 Fed. App'x. 304, 304 (8th Cir. 2008) (per curiam) (reversing dismissal for failure to exhaust where plaintiff's verified complaint asserted he filed grievances but did not receive copies or responses).

Cavan's complaint and exhibits contain factual allegations that he was thwarted in his efforts to exhaust his administrative remedies because prison counselors threatened to shred any future BP-8 and BP-9 forms he filed. He further alleges that he, in fact, witnessed a prison counselor shred a BP-8 form, and that the prison was known for doing this. *See* Second Am. Compl. Ex. 1, Docket No. 58-2 at 3, 11-12. He also asserts in his memorandum of law that he has no protection against staff who destroy or shred his administrative remedies, though he does not elaborate further, other than to refer back to

the exhibits to his complaint. *See* Response at 1 ("'I' an Inmate have no protection against staff who destroy or shred Administrative Remedies, I did point this out in Exh. 1, Pg. 2, Pg. 10"), Docket No. 79. The government's memorandum of law does not address these allegations by Cavan, but simply argues that Cavan failed to follow instructions and properly exhaust his administrative remedies. *See* Docket No. 65 at 5-6, 8, 12.

The BP-8 and BP-9 that Cavan attached to his complaint do not include factual allegations relating to Weber; rather, they only allege facts about medical treatment of his back pain and his request for a surgical consultation. If Cavan's allegation of destruction of forms pertains only to efforts to fix his original, defective BP-8 regarding back pain and a surgical consultation (so he could properly exhaust his remedies regarding those claims), it would have no bearing on exhaustion with respect to Weber (because that BP-8 has no complaints regarding Weber.) *See Townsend,* 898 F.3d at 783-84 (reversing summary judgment as to one defendant because plaintiff was thwarted in filing a timely formal grievance against him, but affirming summary judgment to two defendants because plaintiff failed to mention them in his informal grievance, stating a "prisoner cannot opt out of all administrative remedies even when some are unavailable"). But if Cavan's allegation of destruction refers to other BP-8 forms, or BP-8 forms he never filed, then the allegation would bear on exhaustion with respect to claims against Weber.

Cavan's allegations about counselor Greener might – or might not – be read to be limited to the BP-8 attached to the complaint (and thus not relevant to Weber). *See* Second Am. Compl. Ex. 1 at 11-12, Docket No. 58-2. But his allegations about counselor Armstrong, and his other statements about prison staff destroying forms, are not so limited. *See id.* at 3. Though Cavan has the burden of proving exhaustion and his

11

complaint is less than clear on this point, the Court must accept the pleaded facts as true and must construe the complaint in the light most favorable to Cavan, who, as a *pro se* litigant is entitled to the benefit of the doubt. Nor does the Court have the benefit of any counter-argument by the government, whose brief is utterly silent on Cavan's allegations of document destruction and form shredding. Therefore, on the present record the Court cannot find that Cavan has failed to exhaust his administrative remedies as against Weber.

Weber also argues that, apart from the exhaustion issue, Cavan's complaint fails to state a claim against him on various grounds. But for the most part he does not analyze Cavan's claim as an Eighth Amendment cruel and unusual punishment claim. Rather, Weber focuses on the fact that Cavan "mixed in" a retaliation argument with his Eighth Amendment argument (because Cavan alleges Weber's punishment of him was motivated by retaliation); therefore, Weber asserts, it is "fair to assume" he is actually stating a First Amendment retaliation claim, and such a claim is not cognizable under *Bivens.* Moreover, he argues, Cavan cannot state a Fifth Amendment claim because an inmate does not have a protected liberty or property interest in keeping a particular work assignment. *See* Fed. Defs.' Br. at 3-4, 10-11, 14-15, Docket No. 65.

But Cavan is not complaining that his particular work assignment was less favorable or desirable than a different one. Nor does his reference to Weber's motivation necessarily convert his Eighth Amendment claim into a First Amendment one. Cavan's claim, as pleaded, is that Weber inflicted cruel and unusual punishment, in violation of the Eighth Amendment, by deliberately giving him a work assignment that Weber knew would

result in injury to Cavan.[9] Whatever skepticism the Court might have as to the merits of this claim, the Court cannot dismiss it at the pleading stage by construing it to plead a cause of action it does not purport to plead. *Cf. Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004) (court will not save a complaint by supplying additional facts or constructing a legal theory that is not pleaded (citations omitted)).

When Weber's brief does turn to the Eighth Amendment argument it makes several factual assertions for which there is simply no evidence in the record. For example, Weber's memorandum asserts he is not a medical professional, had no authority to make decisions regarding work assignments, was not responsible for any of Cavan's alleged injuries, and was not involved in any discussions about Cavan's work or injuries or medical treatment. *See id.* at 3. Cavan does not claim Weber is a medical professional who treated him, so that much is established in the record. But there is no declaration by Weber, nor any declaration submitted on his behalf, that states his title, job duties, scope of authority, role, actions, or any facts regarding the events alleged by Cavan.[10] *See Hayes v. Federal Bureau of Prisons*, No. 12-cv-577, 2015 WL 791248, at *10-11 (D. Minn. Feb. 5, 2015) (noting that defendants' first summary judgment motion was denied because court lacked relevant information that was provided for the second summary

---

[9] For this reason, the Court does not reach Weber's qualified immunity argument, which is unresponsive to Cavan's complaint because the argument rests on the same proposition that no claim is stated because an inmate has no statutory or constitutional right to be assigned to a particular job. *See* Fed. Defs.' Br. at 15-16, Docket No. 65.

[10] A declaration by Bernie Richards states that, after Cavan filed his lawsuit, he investigated a claim that Cavan was injured at work; asserts that Cavan did not tell any (unnamed) supervisors about any injury or workplace medical restriction; and states that Cavan's work assignment was changed due to an infraction. But the declaration does not mention Weber and does not resolve the Eighth Amendment factual allegations against Weber. *See* Richards Decl., Docket No. 68.

13

judgment motion, which was granted), *Report and Recommendation adopted* (Feb. 25, 2015).

Consequently, while it may turn out to be the case that Weber had no legally relevant role in the alleged events and that Cavan's claims against him lack merit, they cannot be dismissed on the present record. Similarly, it may be the case that Cavan has failed to exhaust available remedies regarding his claims against Weber, but that is a disputed issue not resolved by the record before the Court.

## RECOMMENDATION

For the reasons set forth above, it is recommended that:

1. Plaintiff Seui Cavan's Motion to Dismiss Dr. Mayer [Docket No. 111] be GRANTED and all claims against Mayer be dismissed without prejudice; and accordingly that Defendant Mayer's Motion for Summary Judgment and/or for Statutory Dismissal Pursuant to Minnesota Statutes Section 145.682 [Docket No. 86] be DENIED AS MOOT.

2. Cavan's Motion [Docket No. 74] and Omnibus Motion [Docket No. 82] be DENIED.

3. The Federal Defendants' Motion to Dismiss [Docket No. 63] be GRANTED IN PART and DENIED IN PART; that the motion be granted with respect to Bennett and Voss and that all claims against them be dismissed without prejudice for lack of subject matter jurisdiction; and that the motion be denied with respect to Weber.

Dated: February 11, 2020      s/David T. Schultz
                              DAVID T. SCHULTZ
                              United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).