## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Seui Cavan, | Case No. 18-cv-2568 (JRT/DTS) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Michael Weber, *in his individual capacity,* | |
| Defendant. | |

---

Plaintiff Seui Cavan brought a *Bivens*[1] action alleging Eighth Amendment violations by personnel at the Federal Correctional Institution in Sandstone, Minnesota (FCI-Sandstone).[2] Of the four original defendants, only Michael Weber remains. The other three, who are medical personnel, were dismissed from the lawsuit, one voluntarily by Cavan and the other two because they are immune under the Public Health Services Act. *See* Order, Docket No. 117. Cavan and Weber then engaged in discovery and have now filed cross-motions for summary judgment. Docket Nos. 163, 171. For the reasons stated below, the Court recommends denying Cavan's motion and granting summary judgment to Weber.

## FINDINGS OF FACT

**I.    Second Amended Complaint**

The operative pleading in this lawsuit is Cavan's Second Amended Complaint, including exhibits. Docket Nos. 58-1 to 58-7; *see* Order (May 24, 2019) ¶ 2, Docket No. 60. Many of the allegations relate to the performance of medical services and pertain to

---

[1] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).
[2] After this lawsuit was filed, Cavan has twice been transferred to different federal facilities and is now at the Federal Medical Center in Springfield, Missouri.

the now-dismissed defendants. Cavan's remaining claim is a *Bivens* claim for damages alleging that Weber inflicted cruel and unusual punishment in violation of the Eighth Amendment by deliberately having him placed in a Food Services job that Weber knew was likely to harm him given his medical needs. *See* Second Am. Compl. Sec. IV, Claim 1 at 6A [Docket No. 58-1 at 5], and Ex. 1 at 3, 5-8, 10 [Docket No. 58-2 at 4, 6-9, 11]. Cavan claims his Food Services job caused injury and compounded preexisting injuries to his back and nervous system. *Id.* Sec. IV, Claim 1 at 6A, Docket No. 58-1 at 5.

## II.     SIS Technician Weber

During the relevant time period Weber was employed by the Federal Bureau of Prisons (BOP) as a Special Investigative Services (SIS) Technician working at FCI-Sandstone. Weber Decl. ¶ 3, Docket No. 165. In this role he assisted the SIS Lieutenant with investigations into potential violations by inmates of the BOP's prohibited acts. *Id.* and Ex. A (SIS Technician Position Description), Docket Nos. 165, 165-1. During an investigation Weber interviewed suspects and witnesses, collected evidence, searched records, conducted monitoring activities, and prepared investigative reports. *Id.* His duties included searching inmate work areas to maintain the safety and security of the prison. *Id.* As an SIS Technician he did not have authority to assign an inmate to a particular work detail. *Id.* ¶ 7 and Ex. A.

## III.    Work Assignments

Inmates who are physically and mentally able to work are required to participate in a work program. Kensy Decl. ¶ 3 and Ex. A at 1 (BOP Program Statement 5251.06 "Inmate Work and Performance Pay"), Docket Nos. 166, 166-1. "In making the work and/or program assignment(s), staff shall consider the inmate's capacity to learn, interests, requests, needs, and eligibility, and the availability of the assignments(s). An

inmate's assignment shall be made with consideration of the institution's security and operational needs, and should be consistent with the safekeeping of the inmate and protection of the public." Program Statement 5251-06 at 4.

Counselors in an inmate's Unit Team manage inmate work assignments. Kensy Decl. ¶¶ 1, 4; Program Statement 5251.06 at 4. Generally, staff try to accommodate an inmate's work preference, but that preference can be overridden, such as when an inmate's behavior jeopardizes the safety and security of the prison while at his work assignment. Kensy Decl. ¶ 4. When a staff member raises a security concern about an inmate's particular work assignment, the Counselor will remove the inmate from that work detail and reassign him to another detail. *Id.*

If an inmate has any limitations on his ability to work, medical staff issue him a "medical duty status" (MDS), which is entered into the SENTRY database that all staff can access. *Id.* ¶ 5. Counselors verify an inmate's MDS before assigning him to a work detail. *Id.*

**IV.     January 11, 2018 Investigation and Removal from Plumbing Shop**

Cavan worked in the plumbing shop at FCI-Sandstone from February 1, 2012 to January 12, 2018. *Id.* ¶ 6 and Ex. B (Inmate History Work Detail), Docket Nos. 166, 166-2.

On January 11, 2018 Weber searched the plumbing shop. Weber Decl. ¶ 4, Docket No. 165. He discovered an office phone with chargers concealed inside. *Id.* The only approved chargers for inmate use are for their MP3 players and are located in the housing units. *Id.* Weber thus determined the chargers were contraband and conducted an investigation to determine their owner and whether discipline might be appropriate. *Id.* Weber interviewed Cavan, who admitted making the charging cords to charge MP3

3

players. *Id.* ¶ 5. Weber says Cavan had no explanation as to why they were hidden in the office phone, *id.,* but Cavan disputes it was an office phone and that the chargers were concealed. Cavan Decl. ¶ 5, Docket No. 198. Rather, Cavan says it was an office calculator "with an MP3 player still connected to the office calculator with charging cords for MP3 players." *Id.*

Based on his investigation, Weber determined Cavan should no longer work in the plumbing shop or facilities department where he had ready access to supplies he used to make the contraband chargers. Weber Decl. ¶ 6, Docket No. 165. He contacted Cavan's Unit Team to recommend he be removed from the plumbing shop work detail due to concerns about the safety and security of the prison. *Id.* ¶ 7. The Unit Team accepted the recommendation and removed Cavan from the plumbing shop. *Id.* Weber does not recall whom he talked to at the Unit Team. *Id.* Cavan asserts that Weber not only recommended his removal from the plumbing shop but also "instructed" the Unit Team to reassign him to Food Service and instructed Clint Cranford, who was in the room during the interview, to call the Food Services coordinator to have Cavan assigned to work there. Cavan Decl. ¶¶ 4, 9-10, Docket No. 198. Cavan says he told Weber he had an injured back and a pending MRI, to which Weber responded with a derogatory comment. *Id.* ¶ 4.

On January 12, 2018 Cavan was reassigned to Food Service, Day Watch Shift, and the next day was reassigned to Food Service, Kitchen PM Shift, where he worked until January 23, 2018. Kensy Decl. ¶ 6 and Ex. B, Docket Nos. 166, 166-2.  At the time of his reassignment, Cavan did not have any MDS that restricted his work assignment. *Id.* ¶ 7 and Ex. C (Inmate History Medical Duty Status), Docket Nos. 166, 166-3. Beginning January 23, 2018 (through September 1, 2018) Cavan had an MDS that

4

prohibited him from lifting over 20 pounds and from working. *Id.*[3] From January 23 to September 1, 2018 he was temporarily excused from work due to his medical needs. *Id.* ¶ 6 and Ex. B. Weber denies knowledge of any work restrictions Cavan might have had due to his medical status and states he did not recommend Cavan be removed from the plumbing shop on January 11, 2018 to punish him or to cause him physical injury. Weber Decl. ¶ 8, Docket No. 165.

## CONCLUSIONS OF LAW

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of identifying the basis for its motion and the portions of the record that it believes demonstrates the absence of a genuine dispute of material fact. *Bedford v. Doe,* 880 F.3d 993, 996 (8th Cir. 2018). Once the moving party satisfies the initial burden, the nonmoving party must respond by submitting evidentiary materials of specific facts showing the presence of a genuine issue for trial. *Id.* at 997. The nonmoving party must do more than raise some metaphysical doubt about the material facts and cannot rest on mere denials or allegations. *Id.* Rather, he must present enough evidence so that a jury could reasonably find in his favor. *Id.*

A *Bivens* claim "is brought against [an] individual official for his or her own acts, not the acts of others. The purpose of *Bivens* is to deter the *officer.*" *Ziglar v. Abbasi*, 137 S.Ct. 1843, 1860 (2017) (internal quotation marks and citation omitted). Government

---

[3] Another entry on the MDS printout indicates that from January 16 to 23, 2018 he was restricted to "No Sports/No Weight Lifting; Weight - No Lifting Over 20 Lbs." It does not appear this entry relates specifically to work assignments but, in any event, it post-dates the January 11, 2018 events at issue.

officials cannot be held liable for unconstitutional conduct by their subordinates under a theory of *respondeat superior. Id.*

Cavan alleges that on January 11, 2018[4] Weber inflicted cruel and unusual punishment on him and was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment by reassigning him to a Food Services job he knew was likely to harm him. *See Estelle v. Gamble,* 429 U.S. 97, 104 (1976) (prison official's deliberate indifference to inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment). But the record shows that, first, Weber had no authority to assign inmates to a work detail and, second, Cavan did not have an MDS restricting his work assignment as of January 11, 2018. No MDS restriction appears in the SENTRY database until later in January. Thus, even if it had been part of Weber's job to reassign inmates to a work detail, or even if he had taken actions that exceeded his authority, such action by Weber would not support Cavan's Eighth Amendment claim. There was no MDS restriction to alert Weber that particular work assignments might be medically inappropriate and likely to cause harm. Weber could not have deliberately disregarded a medical restriction that did not exist. *See Nelson v. Shuffman*, 603 F.3d 439, 448 (8th Cir. 2010) (deliberate indifference requires an inmate to show an objectively serious medical need and that the prison official actually knew of but deliberately disregarded it).

---

[4] The record is clear that Weber's interactions with Cavan happened on January 11, 2018, despite some later confusion arising from Cavan's use of the wrong date in his complaint letter to the Department of Justice Office of the Inspector General (OIG). *See* Cavan Letter (Aug. 21, 2018) (identifying the date as "1/11/17"), Docket No. 167-3. OIG determined it was a "management matter" for the BOP [Docket No. 167-4], which initiated a local investigation [Docket No. 167-5]. *See also* Staff Affidavits and Investigative Report, Docket Nos. 167-6 to 167-12; Cavan's Motion to Amend Date, and Order, Docket Nos. 172, 189.

6

Cavan argues Weber knew about his back injury and a pending MRI because he told him about it on January 11, 2018. He states Weber's response was to curse and state in a derogatory manner that he did not care about Cavan's back or MRI, which Cavan contends is evidence of deliberate indifference to his serious medical needs. But these allegations do not create a fact dispute that precludes summary judgment for Weber. Even if the Court accepts the allegations as true, it makes no difference to the legal analysis because (1) Weber being told by Cavan that he has a back injury is not the same thing as Weber knowing that Cavan has any work restrictions attributable to the back injury; and (2) Cavan had no MDS restriction on January 11, 2018. Cavan has failed to present evidence from which a jury could conclude that that Weber personally engaged in actions that violated the Eighth Amendment.

Cavan also argues that Weber is liable because he set in motion the events that led to Cavan's removal from the plumbing shop when Weber investigated the contraband charging cords that he found there. *See* Cavan Mem. 14 ("Therefore, without Weber communicating with Unit Team, Unit Team would not [] have any idea of Cavan's situation; Weber's actions have created a reaction, due to defendant Michael Weber Special Investigative Service Technician and apparent federal authority contacted his Unit Team and recommended Cavan['s] removal"), Docket No. 197. But Weber is only liable under *Bivens*, if at all, for his own acts, not the acts of others. And as discussed above, Cavan's factual allegations against Weber do not present a genuine issue for trial on his

7

Eighth Amendment claim. Accordingly, the Court recommends granting Weber's summary judgment motion[5] and denying Cavan's summary judgment motion.[6]

## RECOMMENDATION

For the reasons set forth above, the Court RECOMMENDS:

1. Defendant Weber's Motion for Summary Judgment [Docket No. 163] be GRANTED.

2. Plaintiff Cavan's Motion for Summary Judgment [Docket No. 171] be DENIED.

Dated: June 29, 2021                           ___s/David T. Schultz_____
                                               DAVID T. SCHULTZ
                                               U.S. Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

---

[5] Weber also argues that summary judgment is warranted because Cavan cannot establish damages, as there is no evidence the Food Services job caused him harm; Weber is entitled to qualified immunity; and Cavan has not stated a cognizable claim under *Bivens* because his claim differs in meaningful ways from the 8th Amendment *Bivens* claim the Supreme Court recognized in *Carlson v. Green*, 446 U.S. 14 (1980). *See* Weber Mem., Docket No. 168. In light of the recommended disposition here, the Court does not address these additional grounds.

[6] Cavan argues he is entitled to summary judgment on his claim that he properly exhausted his administrative remedies and on the merits of his Eighth Amendment claim. Because the Court recommends granting Weber's summary judgment motion on the Eighth Amendment claim, the Court does not address the exhaustion issue.